UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **DOROTHY WALKER** | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | Case No. 1:19-CV-574-RP |
| | § | |
| **NEUTRON HOLDINGS, INC.,** | § | |
| **d/b/a LIMEBIKE,** | § | |
| **d/b/a LIME SCOOTERS** | § | |
| *Defendant* | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion to Compel Arbitration and for Stay or Dismissal, filed on October 18, 2019 (Dkt. No. 13), along with Plaintiff's Response (Dkt. No. 14) and Defendant's Reply (Dkt. No. 15); and Plaintiff's Motion to Compel Responses to the First Set of Interrogatories and First Requests for Production, filed on December 3, 2019 (Dkt. No. 16). The District Court referred the above motions to the undersigned Magistrate Judge for Report and Recommendation and disposition respectively, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I. Background

On May 2, 2019, Dorothy Walker filed this lawsuit against Defendants Neutron Holdings, d/b/a LimeBike, d/b/a Lime Scooters ("Lime") and Zachary Carter (together, "Defendants") in the 126th Judicial District Court of Travis County, Texas. Walker used Lime's smartphone application (the "Lime App") to rent a Lime Scooter near the Texas Capitol in Austin on August 14, 2018. She alleges that the scooter's brakes did not work as expected and that a software problem caused

sudden excessive braking. Walker alleges that, as she "struggled to stop her out-of-control scooter, the scooter tipped over, throwing her face-first into the wrought iron gates surrounding the Capitol." Dkt. No. 1 at 13 ¶ 24. Walker suffered two broken ribs and multiple facial injuries. Her Petition alleges negligence and gross negligence by Lime and Carter, Lime's Austin Operations Manager. Lime removed the action to this Court on June 4, 2019. Dkt. No. 1.

On October 18, 2019, Lime filed a Motion to Compel Arbitration, asking this Court to enforce the arbitration clause in the Lime App User Agreement & Terms of Service ("User Agreement"). Dkt. No. 13. Lime argues that this case must be dismissed or stayed because an arbitration agreement between the parties requires Walker to arbitrate the claims asserted in this lawsuit.

On December 3, 2019, Walker filed a Motion to Compel Lime to respond to her First Set of Interrogatories and First Set of Requests for Production. Dkt. No. 16.

The Court addresses the Motion to Compel Arbitration first.

## II. Neutron Holdings' Motion to Compel Arbitration

Walker does not dispute that the User Agreement contains a binding arbitration clause that would cover her claim in this suit. Dkt. No. 14. There is also no factual dispute. The only dispute between the parties is whether Walker entered a valid, enforceable contract with Lime when she downloaded the Lime App and clicked the word "NEXT" on the sign-in page. *Id.*

### A. The Law of Arbitration

"Under the Federal Arbitration Act [FAA], parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA was designed to overrule the judiciary's long-standing refusal to enforce

agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (internal quotations and citations omitted). Thus, the FAA establishes "a liberal federal policy favoring arbitration agreements" and "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Although there is a strong federal policy favoring arbitration, "this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478. Rather, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, 489 U.S. at 478.

When considering a motion to compel arbitration, courts apply a two-step framework to determine whether a dispute must be arbitrated. First, the court must determine "whether the parties entered into *any arbitration agreement at all*." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). "This first step is a question of contract formation only—did the parties form a valid agreement to arbitrate some set of claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 2620 (2018). This initial question is for the court. *Kubala*, 830 F.3d at 201; s*ee also 20/20 Commc'ns, Inc. v. Crawford*, 930 F.3d 715, 718 (5th Cir. 2019) ("[I]f parties dispute whether they in fact ever agreed

to arbitrate at all, such questions of contract formation are considered 'gateway' issues that presumptively must be decided by courts, not arbitrators.") (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).

To determine whether there is a valid agreement to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). Under Texas law,[1] a binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012).

If the court finds that there is a valid agreement to arbitrate, the court moves on to the second question: whether the claim at issue is covered by the arbitration agreement. *IQ Prods.*, 871 F.3d at 348. In the second step, the court must determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb*, 89 F.3d at 258 (5th Cir. 1996) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). This second question is usually a question for the court, unless the arbitration clause contains a valid delegation clause for an arbitrator to determine whether the claim falls within the arbitration agreement. *Kubala*, 830 F.3d at 202.

Once the court determines that there is a valid arbitration agreement, the strong federal policy favoring the enforcement of the arbitration agreements applies, and all ambiguities must be resolved in favor of arbitration. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). As the Supreme Court has stated: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible

---

[1] The parties agree that Texas law applies in this case. Dkt. No. 14 at 4.

4

of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers*, 363 U.S. at 582-83). "The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence." *Grant v. Houser*, 469 F. App'x. 310, 315 (5th Cir. 2012). Because of the strong presumption in favor of arbitration, the party opposing arbitration bears the burden to demonstrate either that the agreement is invalid or that the claims are outside of the agreement's scope. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

### B. Whether Lime and Walker Entered Into An Arbitration Agreement

As stated *supra*, the Court must decide whether the parties entered into an arbitration agreement when Walker downloaded the Lime App and clicked the word "NEXT" on the sign-in page. The Lime App uses what is known as a "sign-in wrap" agreement for its User Agreement.[2] The sign-in page displays a link to the User Agreement and states: "By signing up, I confirm that I am at least 18 years old, and that I have read and agreed to Lime's User Agreement & Terms of Service." Dkt. No. 13 at 3; Dkt. No. 13-1 at 5. The User Agreement notice appears immediately below the two buttons on the sign-in page, which prompt the user to fill in their phone number and select "NEXT" or select "Continue with Facebook." *Id.* An image of the app follows.

---

[2] Other "wrap" agreements include "browsewrap" contracts, in which a website states that the user assents to terms and conditions simply by using the website; "clickwrap" contracts, which require a user to click "I agree" to indicate that they accept terms and conditions; and "scrollwrap" contracts, which require a user to scroll through the full text of terms and conditions before clicking a button that states, "I agree." *See, e.g.*, *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 394-95 (E.D.N.Y. 2015) (summarizing these types of online consumer contracts).



Dkt. No. 13-1 at 5. Walker filled in her phone number, clicked on the word "NEXT," and used the Lime App to rent her scooter. Dkt. No. 14 at 2.

Walker argues that she did not form a contract with Lime because she did not have constructive notice of the agreement, for two reasons: (1) Lime does not prompt its users to review its user agreement, and (2) the text of the User Agreement notice is "small, faint, gray typeface, far below Lime's invitation to ride," and is "practically illegible." Dkt. No. 14 at 2, 3; *see also id.* at 6-11.

1. **Reasonable Notice**

Although the Fifth Circuit has not spoken on the issue of sign-in wrap agreements, other courts have enforced them where the user had reasonable notice of the existence of the terms, i.e., where the notice was reasonably conspicuous. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77 (2d Cir. 2017); *Colgate v. JUUL Labs Inc.,* 402 F. Supp. 3d 728, 764 (N.D. Cal. 2019) ("Courts considering

similar agreements have found them valid where the existence of the terms was reasonably communicated to the user.") (citing *Meyer*, 868 F.3d at 76). In making that determination, courts "consider the perspective of a reasonably prudent smartphone user." *Meyer*, 868 F.3d at 77.

The U.S. District Court for the Northern District of Texas addressed the Lime App in deciding a motion to compel arbitration in *Phillips v. Neutron Holdings, Inc.*, 2019 WL 4861435 (N.D. Tex. Oct. 2, 2019), a case highly similar to this one. In *Phillips*, the District Court found that the hyperlink to the User Agreement on Lime's sign-up screen was reasonably conspicuous and so placed the plaintiff on notice. *Id.* at *5. The court also found the notice to be legible, and that the hyperlinked words **"User Agreement** & **Terms of Service**" in dark, bold font stood out from both the white screen and preceding gray text. *Id.* Based on these circumstances, the court found, a reasonably prudent smartphone user would understand that by signing up for Lime, he or she is assenting to the User Agreement. *Id.*

This Court also has held that a user had sufficient notice of a website's arbitration policy in *May v. Expedia, Inc.*, No. 1:16-CV-1211-RP, 2018 WL 4343445, at *3 (W.D. Tex. July 19, 2018), *report and recommendation adopted*, No. 1:16-CV-1211-RP, 2018 WL 4343427 (W.D. Tex. Aug. 27, 2018). This Court considered a website registration page that "required the user to click a 'Continue' button to complete the transaction," and displayed a notice "directly above the 'Continue' button" that informed the user: "By clicking 'Continue' you are agreeing to our Terms and Conditions and Privacy Policy." *Id.* The Court noted that the Terms and Conditions and Privacy Policy "were in blue, as opposed to black, font to indicate they were hyperlinks." *Id.* The Court concluded that these features rendered the website "sufficient to put [the plaintiff] on notice that by continuing the transaction he was agreeing to the then-in-effect Terms and Conditions and to bind him." *Id.* (citations omitted).

This Court reached the same result in *Cubria v. Uber Techs., Inc*., 242 F. Supp. 3d 541, 548 (W.D. Tex. 2017) (applying California law). In *Cubria*, the Court found that "placement of the phrase 'By creating an Uber account, you agree to the Terms of Service & Privacy Policy' on the final screen of the account registration process was prominent enough to put a reasonable user on notice of the terms of the Agreement." *Id.* at 548. The court analogized using an app with a sign-in wrap agreement to opening a package labeled with a disclaimer: "Where a notice on a package states that the user agrees to certain terms by opening the package, a court could reasonably conclude . . . that the user has a duty to act in order to negate the conclusion that the consumer had accepted the terms in the notice." *Id.* (citation omitted).

Walker primarily relies on two cases, both distinguishable. In *Cullinane v. Uber Techs., Inc*., 893 F.3d 53, 64 (1st Cir. 2018), an app user was not reasonably notified of an arbitration clause in a sign-in wrap agreement where the sign-in page contained a notice of "deemed acquiescence" and a link to terms without requiring users to click "I accept," and the notice was displayed in small, dark gray, non-bold font on a screen "filled with other very noticeable terms that diminished the conspicuousness" of the notice. Walker also cites *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1178-79 (9th Cir. 2014), in which a browsewrap agreement did not prompt users to take any affirmative action to demonstrate assent.

Here, a reasonable user would view the Lime App sign-in screen and see that the User Agreement is part of the offer to proceed with the transaction by clicking "NEXT" or "Continue with Facebook."[3] The Court finds that the Lime App gave Walker adequate notice of the User Agreement. Because Walker does not dispute any other aspect of contract formation, the Court concludes that the parties entered into an arbitration agreement.

---

[3] In fact, when a user clicks on the User Agreement link, the second full paragraph warns in capital letters: "Important Notice: This agreement is subject to binding arbitration . . . ." Dkt. No. 13-1 at 6.

## 2. Arbitrability of the Claims

As to the second step in considering a motion to compel arbitration, the parties do not dispute that Walker's claims fall within the arbitration agreement. The arbitration provision in the User Agreement clearly provides that "[a]ny and all disputes," including any "intentional tort or negligence" between Walker and Lime or any of its employees, "must be resolved exclusively by final and binding arbitration." Dkt. No. 13-1 at 12 § 2.3. Accordingly, Walker's claims are covered by the arbitration agreement. Because there is a valid arbitration agreement between Walker and Lime, the strong federal policy favoring the enforcement of the arbitration agreements applies. *Banc One*, 367 F.3d at 429.

### C. Conclusion as to Arbitration

Lime has established that the parties entered into an arbitration agreement, and Walker has failed to sustain her burden to demonstrate that the agreement is invalid or that her claims are outside of its scope. *See Carter*, 362 F.3d at 297. Accordingly, the undersigned recommends that the District Court grant Lime's Motion to Compel Arbitration.

Although Section 3 of the FAA directs district courts to stay a case pending arbitration, this court is bound by Fifth Circuit precedent "which states that dismissal is appropriate 'when all of the issues raised in the district court must be submitted to arbitration.'" *Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc.*, 729 F.3d 443, 447 (5th Cir. 2013) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)); *see also Griggs v. S.G.E. Mgmt., L.L.C.*, 905 F.3d 835, 839 (5th Cir. 2018) ("Some circuits have held that district courts must stay a case when all claims are submitted to arbitration, but this circuit allows district courts to dismiss such claims outright."). Because the Court finds that Walker's sole claim in this lawsuit is governed by the arbitration agreement at issue, the Court recommends that the District Court dismiss Walker's claim with prejudice.

### III. Walker's Motion to Compel Discovery Responses

Walker also filed a Motion to Compel responses to her first set of interrogatories and first set of requests for production. Dkt. No. 16. Because the Court finds that Walker's claims are subject to an arbitration clause, her motion to compel discovery is **DENIED**. "It was 'Congress's clear intent, in the [FAA], to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'" *Bell v. Koch Foods of Miss., LLC*, 358 F. App'x 498, 500-01 (5th Cir. 2009) (denying pre-arbitration discovery) (quoting *Moses*, 460 U.S. at 22).

### IV. Recommendation and Order

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Lime's Motion to Compel Arbitration (Dkt. No. 13) and **DISMISS** Walker's claims **WITH PREJUDICE**. Based on this recommendation, the undersigned **ORDERS** that the Motion to Compel Responses to Plaintiffs' First Set of Interrogatories and First Requests for Production filed on December 3, 2019 (Dkt. No. 16) is **DENIED**.

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

### V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to

proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on February 11, 2020.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE